Donald Houston DUKE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1971.

Rehearing Denied Feb. 4, 1972.

William E. Rummage, Beard, Rummage & Kamuf, Owensboro, for appellant.

John B. Breckinridge, Atty. Gen., David E. Murrell, Asst. Atty. Gen., Frankfort, for appellee.

NEIKIRK, Judge.

Donald Houston Duke was convicted in the Christian Circuit Court of keeping gambling devices, and his punishment was fixed at a $500 fine and three years' confinement in the state reformatory. KRS 436.230. He appeals. We affirm.

The appellant, as proprietor of the Thoroughbred Supper Club in Christian County, offered to the general public dining accommodations and the availability of a bar. He had leased the premises and was dispensing alcoholic beverages under a state license.

The appellant's lease described a tract of land containing one and one-half acres, more or less, with improvements thereon located about one and one-half miles south of Crofton on the west side of U. S. Highway 41. The building on the premises had a dining room, kitchen, and a bar on the first floor. An open stairway led to the downstairs portion of the facility. This level had an office, public restrooms, and three other rooms.

Late one evening agents of the Alcoholic Beverage Control Board, accompanied by other law enforcement officers, appeared at the Club and advised that they were there to inspect the licensed premises. The appellant was in his office. The officers asked for permission to enter that portion of the building near the office and public restrooms designated by a sign as "apartment." The door to the area was locked. The appellant refused to grant the request, and one of the Alcoholic Beverage Control Board officers opened the door by using force. The officers did not have a search warrant. In the rooms behind the door, the following were found: 2,300 poker chips; 6 decks of playing cards; 16 dice; one Rupert magnifying glass used for detecting marked cards; one "hypo" syringe; one 30-caliber enforcer handgun with a banana clip holding thirty rounds; two wooden money boxes; one full size Reno crap table, with two green covers; one chuck-a-luck with three dice; one "croup" stick used in raking dice back to the player; and a device used for testing dice.

At the trial, the appellant moved to suppress the evidence obtained by the officers in the search of his "apartment," achieved after the forcible entry without a search warrant. The trial court held an extensive evidentiary hearing and overruled the motion. Appellant contends that the trial court committed reversible error in so ruling because, he says, there was an illegal search and seizure. The Commonwealth counters that the Alcoholic Beverage Control Board officers had the right under KRS 241.090 to search the premises without a search warrant.

Appellant urges us to believe that the area where the gambling devices were found was his private apartment and not a part of the licensed premises. He had the supervision and absolute control of the entire premises. He was licensed to traffic in alcoholic beverages on the premises. The argument that all trafficking in alcoholic beverages went on upstairs in the confined area of the dining room and bar does not convince us that the downstairs was not part and parcel of the licensed premises. An open stairway leading to the downstairs office and public restrooms was an unqualified invitation for the public to frequent that part of the building containing the rooms designated as "apartment."

We have no hesitancy in holding that the so-called "apartment" was a part of the licensed premises. Our posture is strengthened by the definition of "licensed premises" as set out in KRS 241.010(7), which is:

" 'Building containing licensed premises' means the licensed premises themselves and includes any part of any building in which the premises are contained, and any part of any other building connected with the building by direct access or by a common entrance."

■ We are cognizant of the constitutional provisions, state and federal, and the many judicial pronouncements protecting persons against unreasonable searches and seizures. Here, we are dealing with trafficking in alcoholic beverages under a state license. Such a business enterprise has long been subject to close supervision and inspection. The Kentucky Legislature has broad powers to fashion standards of reasonableness for searches and seizures where the sale of alcoholic beverages is involved. Our Legislature has made it possible for such premises to be "inspected" without a search warrant. KRS 241.090 provides as follows:

"State administrators and all field representatives shall have the full police powers of peace officers, and their jurisdiction shall be coextensive with the state. They may inspect any premises where alcoholic beverages are manufactured, sold, stored or otherwise trafficked in, without first obtaining a search warrant. They may confiscate any contraband property."

In the instant case the agents acted under explicit statutory authority. The search was reasonable as incident to the right of inspection. The trial court did not err in refusing to suppress the evidence obtained. To hold otherwise would nullify the clear intent of the Legislature that Alcoholic Beverage Control Board officers have the right to inspect licensed premises without a search warrant to ascertain if the licensee is in violation of any of the rules and regulations governing such endeavors.

■ The appellant points out that KRS 243.490 provides for revocation of an alcoholic beverage license if a licensee violates any of the provisions of KRS Chapters 241, 243, or 244. Appellant reasons that when he refused the officers permission to inspect a part of his licensed premises, the officers should have preferred charges leading to a revocation of his license. He relies on Colonnade Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60. The Colonnade case stands for the proposition that under the evidence presented, a federal agent, without a search warrant, did not have the right under applicable federal statutes to break a lock and enter a liquor storeroom in the cellar of the licensed premises. 26 U.S.C., Section 5146(b) provides:

"The Secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

26 U.S.C., Section 7606 provides:

"(a) Entry during day.

The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects.

"(b) Entry at night.

When such premises are open at night, the Secretary or his delegate may enter them while so open, in the performance of his official duties.

"(c) Penalties.

For penalty for refusal to permit entry or examination, see section 7342."

888

26 U.S.C., Section 7342 provides:

`"Any owner of any building or place, or person having the agency or superintendence of the same, who refuses to admit any officer or employee of the Treasury Department acting under the authority of section 7606 (relating to entry of premises for examination of taxable articles) or refuses to permit him to examine such article or articles, shall, for every such refusal, forfeit $500."

In the Colonnade case, the majority opinion of the court stated:

"The question is whether the imposition of a fine for refusal to permit entry —with the attendant consequences that violation of inspection laws may have in this closely regulated industry—is under this statutory scheme the exclusive sanction, absent a warrant to break and enter."

\* \* \* \* \* \*

"\* \* \* We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures. Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector."

Our Legislature has adopted standards that provide expressly for inspection without a search warrant. We would agree with appellant that Colonnade would be controlling had our Legislature imposed a fine for refusal by a licensee to have his premises inspected. In our statutory scheme to effect proper inspection of licensed premises where alcoholic beverages are sold, the granting or refusal by the licensee of permission for such inspection is not contemplated. The Colonnade case is not applicable or controlling here.

The appellant further contends that the trial court erred in permitting the Commonwealth, over his objections, to introduce into evidence the handgun taken by the officers. The weapon was discovered in the same place as the gambling paraphernalia. It was an integral part of the scene where the other incriminating evidence was found. We held in Beets v. Commonwealth, Ky., 437 S.W.2d 496, that evidence of the discovery of a quantity of beer and intoxicating liquor was admissible along with the evidence of gambling devices in a prosecution under KRS 436.-230(1) for keeping, managing, setting up, and operating a gambling machine, game, or contrivance. The introduction into evidence of the handgun was not so prejudicial to the substantive rights of the appellant as to warrant a reversal.

The judgment is affirmed.

All concur.