Melvin WHITE, Appellant,

v.

B. Jeffery PENCE; Natalee
Schay, Appellees.

UNITED STATES of America, Appellant,

v.

B. Jeffery PENCE; Natalee
Schay, Appellees.

Nos. 90–2826, 90–2919.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1991.

Decided April 13, 1992.

P.A. Hollingsworth, Little Rock, Ark., argued, for appellant White; Louise A. Lerner, Washington, D.C., argued, for appellant U.S. (John R. Dunne and David K. Flynn, Washington, D.C., on brief), for appellants.

James W. Moore, Little Rock, Ark., argued (William H. Sutton, on brief), for appellees.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Melvin White and the United States appeal from a judgment entered on a jury verdict in favor of defendants Jeffery Pence and Natalee Schay in this Fair Housing Act case. The district court denied White's and the government's motions which requested a new trial on the ground that the verdict was against the weight of the evidence. White, an African American, had alleged that Pence and Schay refused to rent him a house because of his race. The United States later sued Pence and Schay under the Fair Housing Act, 42 U.S.C. § 3612(o) (1988), seeking declaratory and injunctive relief and damages on behalf of White. The cases were consolidated for trial. On appeal, White and the United States argue that the district court erred as a matter of law by basing its denial of their motions for new trial on an incorrect legal standard. We reverse and remand to the district court for further consideration under the proper standard governing motions for a new trial.

White saw an advertisement in the Arkansas Gazette, and called Schay, Pence's rental agent, to inquire about a house for rent in Little Rock, Arkansas. After agreeing to meet at the house, White arrived to look at it, and Schay approached the car and told him that the house had already been rented. White persisted in looking at the house, found it desirable, and was told that Pence had an apartment available for rent in a community 20 miles away. The next day, White asked two coworkers to call the number listed in the ad. They each did, and learned that the house was still available. White then filed a formal complaint of discrimination. Thereafter, he and a friend both placed calls to the agent and learned that the house was still available for rent. There was no dispute that following these events of September 29 and 30, 1988, the house remained available for rent until November 3, 1988.

At trial, Schay testified that she had talked with a prospective renter immediately before White arrived, told that person to go to Pence's office the following morning to sign the lease, but that the person had not done so. Frank Daley testified that he was this person, that he had looked at the property because he and his wife were breaking up, that they later reconciled and he no longer needed the property, and he did not pursue it further.

White filed this suit. After an investigation by the representatives of the Department of Housing and Urban Development, the United States also brought suit seeking relief on behalf of White, and the cases were consolidated for trial. The case was tried, and the jury deliberated about 30 minutes before returning a verdict in favor of Schay and Pence. White and the United States then filed motions for a new trial on the ground that the verdict was against the weight of the evidence and resulted in a miscarriage of justice.

The district court denied the motions, but it did so while confessing that it "simply d[id] not know with any certainty what standard is to be applied by trial courts in this circuit." *United States v. Schay,* 746 F.Supp. 877, 880 (E.D.Ark.1990). The court stated that its confusion was "occasioned by changing and shifting language in various opinions" of this court. *Id.* The district court first pointed to cases stating that when ruling on a motion for a new trial on the ground that the verdict is

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

against the weight of the evidence, the trial court " 'may conduct its own evaluation of the evidence. It may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.' " *Id.* (quoting *Brown v. Syntex Lab., Inc.,* 755 F.2d 668, 673 (8th Cir.1985) (internal citation omitted)). *See also Slatton v. Martin K. Eby Constr. Co.,* 506 F.2d 505, 508 n. 4 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) (same); *Bates v. Hensley,* 414 F.2d 1006, 1011 (8th Cir.1969) (same).

The district court observed that the standard prescribed in *Brown* is consonant with the law in most jurisdictions. 746 F.Supp. at 880. It concluded, however, that *Brown* did not state the proper test to be applied in this circuit. *Id.*

The district court believed that the "problem" first arose in *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973), where the court stated that a motion for new trial may not be granted unless the verdict is against the "clear weight," "overwhelming weight," or "great weight" of the evidence, and that the true standard is simply one as to whether a miscarriage of justice had occurred. *Id.* at 187. The district court believed that the weight standards "change[d] the test." 746 F.Supp. at 881. The district court also pointed to another statement in *Fireman's Fund* which prefaced our reversal of the trial court's grant of a new trial: " 'The evidence is such that reasonable men may differ as to the result, therefore, the determination should properly be left for the jury.' " *Id.* (quoting *Fireman's Fund,* 466 F.2d at 187).

Based on *Fireman's Fund* and cases following it, particularly *Blake v. J.C. Penney Co.,* 894 F.2d 274 (8th Cir.1990), the district court reasoned that "there [could] be no interpretation of the language ... in *Blake* other than that the standard for ruling on

motions for judgments n.o.v. and for a new trial are identical.... In other words, it appears that the Court of Appeals told trial courts in *Blake* that if the evidence is not deficient enough to grant a motion for a judgment n.o.v. it is also not deficient enough to grant a new trial." [1] 746 F.Supp. at 881–82.

Even if this court did not "merge" the new trial and j.n.o.v. standards, the district court still believed that our cases were inconsistent with each other. The district court identified *Bates* and *Slatton* as cases according latitude and deference to the trial judge, while *Blake* and *Fireman's Fund* appear to greatly restrict that discretion. 746 F.Supp. at 880–83.

The court then stated that if the rule expressed in cases such as *Bates* and *Slatton* applied, it "would have no difficulty, after weighing the evidence and considering the credibility of the witnesses, in saying that the motion for a new trial should be granted because the court is convinced that a miscarriage of justice has taken place." 746 F.Supp. at 882. The district court found that Schay's account was "filled with inconsistencies," *id.* at 883, and that Daley's testimony was so incredible that it "should have been given no weight by the trier of fact." *Id.* at 885. If it were permitted to weigh the evidence and disbelieve witnesses, the district court stated that it "would disbelieve Ms. Schay's version and Mr. Daley's almost magical appearance upon the scene, and determine that, based upon the weight of the evidence, a miscarriage of justice has occurred." *Id.* [2]

The court concluded, however, that it could not base the grant of a new trial on the "miscarriage of justice" standard unless it also found that the verdict was against the "overwhelming," "clear," or "great" weight of the evidence. *Id.* at 882–83, 886. The district court stated that it could not find that the evidence met this test unless it were "permitted to comple-

**1.** The district court referred to a dissent expressing such views in *Morgan v. Arkansas Gazette,* 897 F.2d 945, 955 (8th Cir.1990) (Waters, J., dissenting). 746 F.Supp. at 882.

**2.** The district court discussed at length its reasons for finding Schay's and Daley's testimony unbelievable. *See* 746 F.Supp. at 883–86.

ly disregard and disbelieve the testimony of Ms. Schay and Mr. Daley." *Id.* at 886. The district court did "not understand the present law in this circuit to permit that," and it thus denied the motions for a new trial. *Id.* at 886–87.

On appeal, White and the United States argue that under the case law of this circuit, the district court erred in denying a motion for new trial. Schay and Pence, on the other hand, argue that the district court did not abuse its discretion in making this ruling, the proper legal standard was applied, and that a denial of a motion for a new trial on the ground that the verdict is against the weight of the evidence is not reviewable.

We do not believe that the principles governing consideration of motions for new trial on the ground that the verdict is against the weight of the evidence are inconsistent or opaque, as they seemed to the district court. Certainly, we have used a number of verbal formulae in our cases reviewing such rulings. Different approaches may be taken in arguments in the various appeals, and in response our cases may use a particular phraseology, while the same or a different panel in another case in answer to arguments there presented will use a somewhat different rationale. This may show that we have examined different facets of the same general argument in a way required by the framing of the issues before us, but it does not demonstrate inconsistency. This court held as much in *Cole v. Williams*, 798 F.2d 280 (8th Cir.1986), where we rejected the argument that this court had prescribed two different tests to be applied to a motion for new trial. The "argument [f]ails because the two [cases] are compatible."[3] *Id.* at 282 (discussing *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411 (8th Cir. 1985), and *Brown*, 755 F.2d at 668).

We will discuss in some detail the principles guiding consideration of motions for new trial on the ground that the verdict is against the weight of the evidence in the hope that the relationship between these principles will be clarified.

▆▆▆ First, it is evident that the standards for considering a motion for j.n.o.v. differ thoroughly from those governing consideration of a motion for new trial. In a motion for j.n.o.v., the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility.[4] *See Dace v. ACF Indus., Inc.*, 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented*, 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1407 (8th Cir.1987); *Brown*, 755 F.2d at 671. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.[5]

---

3. The district court order referred to this perceived conflict in the lines of cases, but concluded that it could not say that the verdict was against the clear weight, overwhelming weight, or great weight of the evidence. *Cole v. Williams*, 624 F.Supp. 712, 717–18 (W.D.Ark. 1985).

4. In *Dace v. ACF Indus., Inc.*, 722 F.2d 374 (8th Cir.1983), we set out the test that applies to motions for directed verdict or for j.n.o.v.:

We have interpreted the instruction to view the evidence favorably to the nonmovant as requiring the court to (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

722 F.2d at 375. *See also Morgan v. Arkansas Gazette*, 897 F.2d at 948–49. In *Dace*, we recognized the power of the trial court "after considering all the evidence" to grant a new trial when it is "firmly convinced that the jury's verdict will produce a miscarriage of justice." 722 F.2d at 377 n. 5 (emphasis omitted).

5. We recognize that some of our cases, none of which were relied on or discussed by the district court in this case or by the parties in their briefs, may give an impression that the same standards govern consideration of both motions for judgment notwithstanding the verdict and

With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir.1984) (citation omitted). Similar language appears in *Brown*, 755 F.2d at 671–73; *Slatton*, 506 F.2d at 508 n. 4; *Bates*, 414 F.2d at 1011, and early authority cited in *Bates*. *See also Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1266 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

The district court perceived conflict between the rules in *Brown, Bates,* and *Slatton* and those discussed in *Fireman's Fund*. In *Fireman's Fund*, this court observed that the district court in granting a new trial was greatly influenced by its appraisal of the evidence in granting a j.n.o.v., and stated that seven of the ten grounds in support of the conditional grant of new trial were those given in support of its j.n.o.v. ruling. 466 F.2d at 186. We then discussed the judicial balancing required, first quoting from a Fifth Circuit case, and then articulating our conclusion:

"Although the cases are not consistent in usage, some cases using the phrase 'clear weight' and others using the phrase 'overwhelming weight' or 'overwhelming evidence,' it seems clear that the jury's verdict must at least be against the *great* weight of the evidence before a new trial may be granted." Otherwise, the Fifth Circuit adds, it

"would destroy the role of the jury as the principal trier of the facts, and would enable the trial judge to disregard the jury's verdict at will." We endorse these observations.

Regardless of the rhetoric used the true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not.

466 F.2d at 187 (quoting *Cities Service Oil Co. v. Launey*, 403 F.2d 537, 540 (1968) (emphasis in original).

It is apparent that this language in *Fireman's Fund* was discussing a verbal formulation of the quantum of weight to support the grant of a new trial, and while reciting the terms "clear weight," "overwhelming weight," or "great weight," we made plain that the ultimate test was whether there had been a miscarriage of justice. We believe there is nothing inconsistent with the discussion of quantum in *Fireman's Fund* and the discussion of methodology in *Brown, Bates,* and *Slatton,* described above, and in *Cole v. Williams,* we essentially stated as much.

The district court's discretion is not boundless, however. We stated in *Fireman's Fund* and reiterated in *Blake* that the district court is not "'free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" *Fireman's Fund,* 466 F.2d at 186 (quoting *Tennant v. Peoria & Pekin Union Ry. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). *See also Blake,* 894 F.2d at 281. We similarly observed in *McGee v. South Pemiscot School Dist.,* 712 F.2d 339 (8th Cir.1983),

for a new trial. *See Benjamin v. Aluminum Co. of America,* 921 F.2d 170, 173 (8th Cir.1990); *Toro Co. v. R & R Prods. Co.,* 787 F.2d 1208, 1213–15 (8th Cir.1986); *Ybarra v. Burlington Northern, Inc.,* 689 F.2d 147, 150 (8th Cir.1982). Insofar as these cases indicate that the two types of motions are to be treated identically, they are contrary to the great volume of opinions issuing from this court. They do not engage in any meaningful analysis of the differing inquiries but simply through inadvertence may fuse the two inquiries.

that the "trial judge may not usurp the functions of a jury ... [which] weighs the evidence and credibility of witnesses." *Id.* at 344.

*Fireman's Fund* contains further discussion limiting the grant of a new trial. We there stated: "Where the subject matter of the litigation is simple; where there exists no complicated evidence or where the legal principles presented are such that they would not confuse the jury, the court should be reluctant to grant a new trial." 466 F.2d at 187. In this vein, and looking at the particular evidence before the court, we concluded: "The evidence is such that reasonable men may differ as to the result, therefore, the determination should properly be left for the jury." *Id.* We concluded that there was no significant weight factor favoring the defendant in that case, and reversed the grant of the new trial. The cases articulating this theme but underscore this distinction between such rulings and the judicial weighing and balancing required by the cases we have discussed above.

In *Fireman's Fund* there was a conflict between simple testimony. Similarly, in *Goldsmith*, we stated that "the choice between the two stories was essentially a credibility determination for a jury rather than a weight of the evidence issue." 767 F.2d at 416 (citing *McGee*, 712 F.2d at 344). *See also McBryde v. Carey Lumber Co.*, 819 F.2d 185, 189 (8th Cir.1987). *Fireman's Fund* and *Goldsmith* present the situation often found in trials where there is diametrically opposed testimony from credible witnesses with plausible versions and the function of the jury is to accept one or the other. These cases differ substantially, however, from the situation in which a district judge has carefully weighed the testimony of one or more witnesses and found the testimony to be not worthy of belief. Where there has been such a weighing of evidence and an analysis requiring rejection of some of the evidence, more is presented than a simple conflict between the testimony of two witnesses. *Fireman's Fund* and *Goldsmith* point to the direct conflict in credible and plausible evidence that is to be resolved by the jury

and must be contrasted with the rule announced in *Brown, Bates*, and *Slatton*, which authorizes a weighing of evidence and rejection on the basis of lack of credibility of plausibility by the district judge. *Blake*, 894 F.2d at 281, and *Washburn*, 831 F.2d at 1410, are additional examples of our decisions which hold that where reasonable men can differ in evaluating credible evidence, a new trial on the ground of weight of the evidence should not be granted. These decisions are not in conflict with the rule announced in *Brown, Bates*, and *Slatton*.

■ Our cases make clear that in ruling on a motion for new trial, the district court must state its reasons for concluding that the verdict is against the great weight of the evidence. *Washburn*, 831 F.2d at 1409 (citing *Leichihman*, 814 F.2d at 1267). A number of our cases demonstrate the importance of such articulation, including our affirmance of the grant of a new trial in *Brown*, 755 F.2d at 673–74, and *Leichihman*, 814 F.2d at 1267. To the contrary, in *Goldsmith*, 767 F.2d at 416, we commented upon the district court's limited or abbreviated treatment of the question in reversing the order granting the motion for new trial. *Fireman's Fund*, 466 F.2d at 186–87, and *Blake*, 894 F.2d at 281, also are illustrative of cases in which the district court's discussion was not adequate. The clear and careful articulation of reasons is necessary, as we stated in *Fireman's Fund*, so that this court can " 'exercise a closer degree of scrutiny and supervision ... in order to protect the litigants' right to a jury trial' " where the trial court has found the verdict to be contrary to the weight of the evidence. *Fireman's Fund*, 466 F.2d at 187 (citation omitted).

We have recognized the Supreme Court's pronouncement that the authority to grant a new trial is " " 'confided almost entirely to the exercise of discretion on the part of the trial court,' " *Brown*, 755 F.2d at 673 (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980)), and that great deference is to be accorded the trial judge's decision in such rulings. *Brown*, 755 F.2d

at 673. We have plainly articulated the responsibility of the district court to give its reasons for such rulings in *Stafford v. Neurological Medicine, Inc.*, 811 F.2d 470 (8th Cir.1987), where we stated:

> This order only states the conclusion required by *Fireman's Fund* and *Diamond Shamrock*—that the verdict was against the "great weight" of the evidence.... [It] completely lacks the analysis required by those cases. Granting a new trial based on the insufficiency of the evidence involves an analytical exercise peculiarly within the district court's province. With this authority comes the need to give reasons. A district court does not properly exercise its discretionary authority when it fails to articulate the analysis utilized to justify upsetting a jury's verdict.

*Id.* at 474 (citations omitted). This but underscores the importance of the district court's careful explanation of the reasons supporting the grant of a new trial on this ground.

 We have set out these rules in some detail to give the full panoply of reasoning employed by this court in reviewing rulings on motions for new trial on the basis that the verdict is against the weight of the evidence. This court has never considered these principles to be in conflict, nor do we believe that these principles are unclear. It is evident that the district court in denying the motion for a new trial failed to apply these principles. The case thus must be remanded to the district court for further consideration of the motion for a new trial in light of these principles.

The district court concluded that there had been a miscarriage of justice and concluded that if it were free to reject the testimony of Daley and Schay, it would find that the verdict was against the great, clear or overwhelming weight of the evidence. These findings are sufficient to support the grant of the new trial, and it is evident from what we have said that the district court is authorized to analyze the testimony of Schay and Daley, and make a credibility determination and find the testimony unworthy of belief. Having said as much, the decision of whether or not to grant a new trial is a balancing decision and requires a careful consideration and articulation of reasons by the district court. It is inappropriate that we conduct this analysis; rather, we remand to the district court so that it may do so.

Schay and Pence have pointed to our earlier decisions stating that where there has been denial of a motion for new trial on weight of the evidence grounds, we may not review such orders. *See Czajka v. Black*, 901 F.2d 1484, 1485 (8th Cir.1990); *Green v. American Airlines, Inc.*, 804 F.2d 453, 455 (8th Cir.1986); *See also Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir.1990). Had there been an appropriate weighing and balancing and denial, these decisions would prevent our review. On the other hand, this case presents a situation in which the district court has applied an improper legal standard, and these cases thus have no application. Accordingly, we reverse and remand for further consideration in light of the standards set forth in this opinion.